739 A.2d 71

**John Edward DIVVER**

**v.**

**STATE of Maryland.**

**No. 19, Sept. Term, 1999.**

Court of Appeals of Maryland.

Oct. 15, 1999.

380

Robert L. Flynn, III (David J. Hare, on brief), Rockville, for petitioner.

Gary E. Bair, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and ROBERT L. KARWACKI, (retired, specially assigned), JJ.

RODOWSKY, Judge.

The petitioner, John Edward Divver (Divver), contends that he was denied his constitutional right to a speedy trial in the

District Court of Maryland. Before addressing the merits of that contention we must decide whether that issue was unreviewable on petitioner's de novo appeal to the Circuit Court for Howard County and, if reviewable there, in what manner that review was to have been conducted.

On May 25, 1996, at approximately 12:15 a.m., a Howard County police officer arrested Divver for driving while intoxicated or driving under the influence of alcohol in violation of Maryland Code (1977, 1999 Repl.Vol.), § 21–902(a) and (b) of the Transportation Article (TA). He was also charged with failure to stop for a steady red traffic light in violation of TA § 21–202(h). These charges are within the exclusive original jurisdiction of the District Court of Maryland. Md.Code (1974, 1998 Repl.Vol.), § 4–301(a) of the Courts and Judicial Proceedings Article (CJ). Four days after his arrest Divver demanded a speedy trial in the District Court. Sixteen days after his arrest the State served notice on Divver that it was seeking enhanced punishment based on Divver's two prior violations of TA § 21–902(b). Accordingly, Divver faced a potential sentence of three years imprisonment and a $3,000 fine. TA § 27–101(k)(1).

Thereafter, there was no activity in this case until February 20, 1997, approximately nine months after Divver's arrest. On that date the District Court notified Divver that his trial would be held on June 10, 1997, one year and sixteen days after his arrest. There is no evidence that any party to this action had requested a delay in setting the trial date, and there was no earlier trial date from which the case was postponed to June 10, 1997.

In the District Court on June 10 Divver moved to dismiss the charges against him on the ground that he had been denied his constitutional right to a speedy trial. No transcript of the hearing on that motion has been filed in the record, and we would not expect one to have been prepared in view of CJ § 12–401(f) under which appeals from the District Court in criminal cases "shall be tried de novo." The record does show that Divver's motion was denied, that he was found guilty of

driving under the influence and of the traffic signal violation, and that he was sentenced on August 19, 1997.

Divver appealed to the Circuit Court for Howard County and demanded a speedy trial in that court. He also moved in the circuit court to dismiss the charges against him based on the denial of a speedy trial in the District Court. In its answer the State averred that

> "[t]he delay was necessitated by the fact that the District Court of Maryland, District 10, serving Howard and Carroll Counties, was short 2 judges for a significant time during the applicable period.... In addition, the Carroll County District Court had been operating without one judge from May, 1995, until February 1996, placing an additional strain on the Howard County judges."

A hearing was held on that motion, and the record of that hearing was transcribed. It consists of arguments of counsel and of colloquy with the court. No testimony was taken or proffered.

Counsel for Divver represented to the circuit court that the District Court had denied his motion to dismiss after concluding that the delay was not of constitutional magnitude. The prosecutor, based on information received from the prosecutor who had handled the case against Divver in the District Court, agreed, adding that the District Court, in view of its conclusion on the length of the delay, did not engage in any balancing test (see Part II, *infra*). The circuit court expressed uncertainty as to the period that it was to consider on a de novo appeal for purposes of determining if the right had been denied. Counsel were directed to brief the matter, and the hearing on the motion to dismiss was rescheduled.

At the resumed hearing on the motion to dismiss the circuit court denied the motion, concluding that the relevant period was from arrest to trial in the District Court, but that there was no "unconscionable delay." The circuit court said that it "knows full well" that Divver's trial was set in the District Court at "a time when the District Court [sitting in Howard County] was shy of two judges."

At the trial de novo, Divver pled not guilty, and the parties agreed on what the testimony of the arresting officer would be had he appeared in person. Divver did not contest the officer's stipulated testimony. Included in the evidence that the officer would have given were statements made by Divver that he knew he had run the red light, that he had had ten beers to drink, and that he was too drunk to perform certain field sobriety tests.

Divver was convicted in the circuit court and sentenced. He petitioned this Court for the writ of certiorari which we granted.

I

The State contends that Divver's claim of denial of a speedy trial in the District Court is, in effect, unreviewable. This result, the State submits, is a byproduct of the de novo review. Because this State has a two tier trial system as the method of judicial review for persons convicted in the District Court, no transcript of the District Court proceedings is ordered and prepared, and, as the State sees it, there can be no review of the District Court's ruling on Divver's motion to dismiss.

The premise of the State's argument is that the circuit court could determine whether Divver's right to a speedy trial was violated in the District Court only on a record made in the District Court. From this the State concludes that the speedy trial clock starts again with the de novo appeal and that the only issue in the circuit court is whether the appellant has been denied a speedy trial in the circuit court, measured from the noting of the de novo appeal. We reject the State's premise and its conclusion. Under the appeal statute, CJ § 12–401(f), the Maryland Rules of Procedure, and practice under those rules, the issue may be redetermined on de novo appeal. There is nothing to prevent a circuit court from deciding whether an appellant's right to a speedy trial was denied in the District Court based upon a record that is made in the circuit court.

██ CJ § 12–401(f) confers a right of appeal on defendants convicted in criminal cases in the District Court. The appeal is to the circuit court of the county in which the judgment was entered. CJ § 12–403. The "appeal shall be tried de novo." CJ § 12–401(f). There are only two instances in which an appeal in a criminal case may be taken from the District Court to a circuit court on the record made in the District Court. The first is an appeal permitted under limited circumstances to the State. CJ § 12–401(b) and (c). The other is "in any case in which the parties so agree." CJ § 12–401(f); Maryland Rule 7–102(a)(3). Under the State's argument in this case, an accused who, by a motion made in the District Court, unsuccessfully asserts a denial of a constitutional right may have review only in those cases in which the prosecutor at any given time chooses to agree to an appeal on the record of the motions hearing. There is no textual, historic, or public policy basis for that interpretation.

A motions practice in the District Court is permitted under Maryland Rule 4–251(a). If the motion is filed before trial, it is to be in writing, unless the court otherwise directs, and it is to state the grounds upon which it is made and the relief sought. Rule 4–251(a). Motions to suppress or exclude evidence that are filed before trial are by rule deferred for determination at trial. Rule 4–251(b). Otherwise, "motions may be determined at any appropriate time." *Id.* Consequently, Divver was in compliance with the Rules when he orally moved to dismiss in the District Court.

Rule 7–112 applies to all "appeals heard de novo in the circuit court." In the circuit court, with certain exceptions not relevant in this case, the appeal proceeds "in accordance with the rules governing cases instituted in the circuit court." Rule 7–112(c)(3). Under motions practice in the circuit court Divver's motion to dismiss based on denial of a speedy trial in the District Court was a motion asserting a "defense ... capable of determination before trial without trial of the general issue," and, as such, could "be raised by motion filed at any time before trial." Rule 4–252(d). Indeed, Rule 4–252(g) specifically addresses the "determination of a motion to dis-

miss for failure to obtain a speedy trial," and gives the circuit court a discretion to defer that determination until after trial.

■ Under the State's argument in the case before us, there could be no motions practice in the circuit court on de novo appeals where the determination of the motion required taking some evidence on the same issue on which the District Court had taken evidence. Thus, an accused who was convicted in the District Court, after a motion to suppress evidence had been denied, would be unable to obtain a ruling in the circuit court that evidence was unlawfully obtained by the State, because there would be no record of the testimony taken in the District Court. This construction of the de novo appeal statute makes a hollow shell of Rules 7–112(c)(3) and 4–252. Rather, on a de novo appeal, where it is necessary to take evidence in order to determine a pretrial motion, that evidence is taken anew in the circuit court.

Further, the effect of the position advocated by the State is that an accused who is initially convicted in the circuit court, after unsuccessfully seeking dismissal on denial of speedy trial grounds, has a right to have that ruling reviewed on appeal to the Court of Special Appeals, but an accused who is convicted under the same circumstances in the District Court would have no right to relitigate that issue on de novo appeal to the circuit court. That construction of the de novo appeal statute raises serious equal protection questions and should be rejected on that ground. *See Griffin v. Illinois*, 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891, 898 (1956) (holding that equal protection was denied to indigents who were refused an appeal because they could not afford a transcript).

The State analogizes the result that it seeks here to the result in *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984), involving the Massachusetts two tier trial system.[1] Lydon contended that the evidence against him at his first tier trial was legally

---

1. Differences between the Massachusetts system and the Maryland de novo appeal system were pointed out in *State v. Anderson*, 320 Md. 17, 28 n. 4, 575 A.2d 1227, 1232 n. 4 (1990).

insufficient to convict and that, because his sole method of review was by a new trial before a jury, there was a violation of his constitutional protection against double jeopardy as enunciated in *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). *Lydon*, 466 U.S. at 298, 104 S.Ct. at 1808, 80 L.Ed.2d at 318. The Court rejected this contention, viewing the Massachusetts second tier trial as a continuation of the first stage so that jeopardy had not terminated, and the Court analogized the Massachusetts procedure to retrial following an appeal on the record by the defendant, a procedure that does not offend double jeopardy protections under *United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). *Lydon*, 466 U.S. at 308, 104 S.Ct. at 1813, 80 L.Ed.2d at 324.

*Lydon* is distinguishable. The insufficiency of the evidence argument advanced by the defendant in that case depended on the specific evidence that had been offered against him and which had not been reproduced. Here, the denial of speedy trial argument is not dependent on the specific evidence introduced in the District Court. Divver's contention can be decided on a record made in the circuit court that is directed to all of the factors relevant to whether there had been a denial of a speedy trial between arrest and trial in the District Court. Credibility issues aside, it is immaterial for the determination of the de novo motion to dismiss whether the evidence in the circuit court matches that in the District Court.

Accordingly, we hold that Divver had a right to move to dismiss the charges against him in the circuit court based on his contention that he had been denied his constitutional right to a speedy trial in the District Court. Because Divver rests his argument on facts that are not disputed, he did not seek to introduce evidence at the motion hearing in the circuit court. Nevertheless, had he attempted to introduce evidence, he would not have been barred from so doing.

## II

The right of an accused to a speedy trial is guaranteed by article 21 of the Maryland Declaration of Rights as well as by

the sixth amendment to the Constitution of the United States. Divver's demand for a speedy trial that was filed in the District Court did not specifically refer to either constitutional provision. Absent Divver's having limited his argument, we shall decide this case under article 21.

■ This Court considers United States Supreme Court precedents interpreting the sixth amendment to be " ' "very persuasive, although not necessarily controlling," as to the proper construction of Maryland's parallel Article 21 right.' " *Stewart v. State,* 282 Md. 557, 570, 386 A.2d 1206, 1213 (1978) (quoting *Smith v. State,* 276 Md. 521, 527, 350 A.2d 628, 632 (1976)). Consequently, following the decision by the Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), this Court has applied the constitutional standard enunciated in *Barker* when applying article 21.

The standard enunciated in *Barker* was summarized in *State v. Henson,* 335 Md. 326, 643 A.2d 432 (1994), where we said: " 'When the [pre-trial] delay is of a sufficient length, it becomes "presumptively prejudicial," thereby triggering a "balancing test [which] necessarily compels courts to approach speedy trial cases on an *ad hoc* basis." ' *Brady v. State,* 288 Md. 61, 65, 415 A.2d 1126, 1128 (1980), quoting *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 116–117. The factors to be weighed are '[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.' *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. Because whether a period is presumptively prejudicial, or not, depends upon the length of a pre-trial delay, the first factor 'is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.' *Id.* And this factor cannot be applied until it is determined from what point the period of delay is measured. *State v. Bailey,* 319 Md. 392, 410, 572 A.2d 544, 552 (1990)."

*Id.* at 332–33, 643 A.2d at 435 (alteration in original).

■ For speedy trial purposes the length of delay is measured from the date of arrest or filing of indictment,

information, or other formal charges to the date of trial. *State v. Gee,* 298 Md. 565, 569, 471 A.2d 712, 714, *cert. denied,* 467 U.S. 1244, 104 S.Ct. 3519, 82 L.Ed.2d 827 (1984). Here the delay of one year and sixteen days raises a presumption of prejudice and triggers the balancing test.

### Length of the delay

In *Epps v. State,* 276 Md. 96, 345 A.2d 62 (1975), the delay between arrest and trial was one year and fourteen days. *Id.* at 111, 345 A.2d at 72. We observed that the Supreme Court had noted in *Barker* "that an interval of nine months 'may be wholly unreasonable under the circumstances.'" *Epps,* 276 Md. at 110, 345 A.2d at 72 (quoting *Barker,* 407 U.S. at 528, 92 S.Ct. at 2191, 33 L.Ed.2d at 115). We also noted that in a pre-*Barker* decision, *Jones v. State,* 241 Md. 599, 217 A.2d 367 (1966), *overruled on other grounds by Stewart v. State,* 282 Md. 557, 386 A.2d 1206 (1978), we had applied the constitutional guarantee where the delay was nine and one-half months. *Id.* Our opinion in *Epps* then cited with approval cases from the Court of Special Appeals, *Caesar v. State,* 10 Md.App. 40, 267 A.2d 750 (1970), and *Barnett v. State,* 8 Md.App. 35, 257 A.2d 466 (1969), which had considered the constitutional implications of a length of the delay of twelve and eight months respectively. Thus the one year and fourteen day delay in *Epps* was, on its face, "sufficiently inordinate to constitute a 'triggering mechanism' to engage in the 'sensitive balancing process' of reviewing the conduct of both the prosecution and the appellant which gave rise to the delay." *Epps,* 276 Md. at 111, 345 A.2d at 72.

*Jones v. State,* 279 Md. 1, 6, 367 A.2d 1, 5 (1976), *cert. denied,* 431 U.S. 915, 97 S.Ct. 2177, 53 L.Ed.2d 225 (1977), cited *Epps* for the proposition that anything over a "one-year, 14–day interval between arrest and trial is 'presumptively prejudicial,' requiring us to engage in the balancing procedure outlined in *Barker.*" Thus, in *Brady v. State,* 291 Md. 261, 434 A.2d 574 (1981), a fourteen month delay gave rise to a speedy trial claim of prima facie merit. In *Battle v. State,* 287 Md. 675, 686, 414 A.2d 1266, 1272 (1980), "[t]he State concede[d]

that [an] eight month twenty day delay 'might be construed to be of constitutional dimension so as to trigger the prescribed balancing test.' " We said, however, in *Gee*, 298 Md. at 579, 471 A.2d at 718–19, that a six month delay "was not presumptively prejudicial [and therefore] there is no necessity for inquiry into the other factors which go into the balance." [2]

Decisions of the Court of Special Appeals similarly support our conclusion that this case presents a delay from which prejudice is presumed. *See State v. Ruben*, 127 Md.App. 430, 440, 732 A.2d 1004, 1009 (1999) ("delay of nearly 11 months from arrest to trial was of constitutional dimension, albeit barely so"); *Icgoren v. State*, 103 Md.App. 407, 423, 653 A.2d 972, 980 (delay of eleven months and thirteen days raised, "though barely so," a presumption of constitutional dimension), *cert. denied*, 339 Md. 167, 661 A.2d 700 (1995); *Reed v. State*, 78 Md.App. 522, 537, 554 A.2d 420, 428 (1989) (delay of thirteen months presumptively prejudicial); *Carter v. State*, 77 Md.App. 462, 466, 550 A.2d 972, 974 (1988) (delay of seven months and twenty-five days is of constitutional dimension in uncomplicated case involving credit card misuse); *Dorsey v. State*, 34 Md.App. 525, 533, 368 A.2d 1036, 1041–42 (eleven months delay deemed prejudicial), *cert. denied*, 280 Md. 730, 371 A.2d 1104 (1977); *Pyle v. State*, 34 Md.App. 60, 62, 366 A.2d 90, 92 (1976) (same).

Here, the delay is of uniquely inordinate length for a relatively run-of-the-mill District Court case. Trial of the case to verdict on guilt or innocence presented little, if any, complexity. There was one witness for the State, a police officer whose appearance was subject to the control of the State, and

---

2. Most of this Court's cases have addressed the delay issue in situations where the interval between arrest and trial was longer than that presented here. *See State v. Bailey*, 319 Md. 392, 415, 572 A.2d 544, 555 (two years and nine days), *cert. denied*, 498 U.S. 841, 111 S.Ct. 118, 112 L.Ed.2d 87 (1990); *Brady v. State*, 288 Md. 61, 70, 415 A.2d 1126, ·1130 (1980) (fourteen months); *Wilson v. State*, 281 Md. 640, 651, 382 A.2d 1053, 1062 (four years and two months), *cert. denied*, 439 U.S. 839, 99 S.Ct. 126, 58 L.Ed.2d 136 (1978); *Jones v. State*, 279 Md. at 6, 367 A.2d at 5 (two years and five months); *Smith v. State*, 276 Md. at 528, 350 A.2d at 633 (sixteen months).

the only witness for the defense was the accused himself. Given these circumstances, the length of the delay in the instant matter operates more heavily in Divver's favor than would usually be the case in many circuit court prosecutions.

### Reason for the delay

In *State v. Bailey,* 319 Md. 392, 412, 572 A.2d 544, 553, *cert. denied,* 498 U.S. 841, 111 S.Ct. 118, 112 L.Ed.2d 87 (1990), this Court quoted the following passage from *Barker:*

" 'Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.' "

(quoting *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117).

In the instant matter it is clear that the delay of twelve months and sixteen days is attributable to the failure of the District Court earlier to assign the case for trial and, hence, to an earlier trial date. In this respect the instant matter stands alone among the speedy trial cases reported by Maryland appellate courts. The parties and the circuit court agree that the delay in setting this case for trial included a period when the District Court sitting in Howard County was two judges shy of its then full complement of four judges resident in that county. Whether that is the cause of the failure timely to assign this case for trial is immaterial. Assigning cases for trial is the obligation of the State. If the failure to assign the case was due to congestion or understaffing of State offices, the delay is chargeable to the State. *See Jones,* 279 Md. at 12, 367 A.2d at 8–9; *Smith,* 276 Md. at 529, 350 A.2d at 634; *Epps,* 276 Md. at 114–15, 345 A.2d at 74. Accordingly, the

entire delay is weighed against the State in the instant matter, although not as heavily as it would were this a case in which the delay was purposeful, in order to hamper the defense.

### Assertion of the right

This factor clearly weighs in favor of Divver. With uncommon alacrity he made known to the District Court and to the prosecutor that he intended strictly to enforce his speedy trial rights. Thereafter, the State escalated the stakes with its notice of enhanced punishment, but, as time dragged on, the prosecutor seems not to have sought to accelerate the processes of the District Court in scheduling the case for trial. "If ... the trial date set by the assignment office is unsatisfactory in relation to the constitutional mandates, the State's Attorney's Office should request an earlier date, and, if necessary, ask the court to order compliance." *Smith v. State,* 276 Md. at 531, 350 A.2d at 634.

### Showing of actual prejudice

■ Although a presumption of prejudice is created from the length of the delay, actual prejudice may result from any of three factors: (1) oppressive pretrial incarceration; (2) anxiety and concern; and (3) impairment of the defense. *See Bailey,* 319 Md. at 416–17, 572 A.2d at 555–56.

During the period of the delay Divver was on bail. Although his freedom of movement was somewhat restricted, he was not incarcerated. Further, he presented no evidence of any impairment of the defense. These factors weigh heavily in favor of the State.

In the opinion in *Epps,* however, this Court referred to " 'those personal factors' in denials of speedy trials such as interference with the defendant's liberty, the disruption of his employment, the drain of his financial resources, the curtailment of his associations, his subjection to public obloquy and the creation of anxiety in him, his family and friends." 276 Md. at 116, 345 A.2d at 75. With respect to these factors, the *Epps* Court quoted the following passage from the concurring

opinion of Justice White in *Barker* where he, joined by Justice Brennan, said:

"But, for those who desire an early trial, these personal factors *should prevail if the only countervailing considerations offered by the State are those connected with crowded dockets and prosecutorial case loads.* A defendant desiring a speedy trial, therefore, should have it within some reasonable time; and only special circumstances presenting a more pressing public need with respect to the case itself should suffice to justify delay."

*Id.* (quoting *Barker*, 407 U.S. at 537, 92 S.Ct. at 2195, 33 L.Ed.2d at 121 (White, J., concurring)).

In *Brady v. State*, 288 Md. 61, 62, 415 A.2d 1126, 1126–27 (1980), we held that a defendant's speedy trial rights could be violated where there was no showing of any actual prejudice. There "the defendant was unaware of the charge pending against him for most of the period of delay." *Id.* at 62, 415 A.2d at 1126. The defendant was incarcerated, but for an additional crime for which he would have been incarcerated, regardless of the delay. Finding no actual prejudice, the Court of Special Appeals held that there was no violation of the speedy trial right. This Court reversed, saying that "the Court of Special Appeals' holding seemed to be that the presumption of prejudice, which arises from a long delay and which triggers the balancing process, either does not arise or is rebutted under the circumstances of this case, namely ignorance of the pending charge and no showing of actual prejudice." *Id.* at 67, 415 A.2d at 1129. Because in *Brady* the State conceded "that the length of delay from arrest to trial was fourteen months, and that the period was of 'constitutional dimension,'" this Court remanded the case to the Court of Special Appeals "for application of the balancing test in accordance with the principles set forth in [the] opinion." *Id.* at 70, 415 A.2d at 1130. *Accord Henson*, 335 Md. at 329, 643 A.2d at 434 (remanding the case to the trial court for a factual finding as to whether the State entered a *nolle pros* in good faith).

On remand, the Court of Special Appeals again held that Brady's right to a speedy trial was not violated principally because he did not demonstrate "actual prejudice" in that his defense was not damaged by the delay and he had been released on bail. *Brady v. State*, 46 Md.App. 518, 521, 419 A.2d 390, 391 (1980). Once again, this Court reversed saying:

"The intermediate court equated or confused actual prejudice ... with presumed prejudice. Its conclusion was that Brady had not been able to show any prejudice, actual or presumed, and that, therefore, he was not entitled to dismissal. There was no mention of whatever offsetting weight the State's neglect played."

*Brady*, 291 Md. at 265–66, 434 A.2d at 576.

The actual prejudice factor favors the State, but not overwhelmingly.

### III

 We recognize that in this case the weighing of the factors was not performed by the circuit court, and we are informed that it was not performed by the District Court. Under the circumstances of this case, however, it is unnecessary to remand in order to have that function performed by the circuit court on the de novo appeal. Here the essential facts are undisputed. Neither party chose to present any evidence and there are no possible conflicting inferences to be drawn with respect to any material facts. We are able to perform our independent constitutional review on the record that is before us.

" '[N]one of the four factors [is] either a necessary or sufficient condition' " to finding a denial of speedy trial rights. *Epps*, 276 Md. at 107, 345 A.2d at 70 (quoting *Barker*, 407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118). "Rather they are related factors and must be considered together with such other circumstances as may be relevant." *Id.*

 Although we do not intend to suggest that the four factors are to be accorded equal weight on whichever side of

the balance any one may fall, in this case three of the four factors, particularly the length of and reason for the delay, weigh in favor of Divver. Weighing in favor of the State is the absence of any actual prejudice to the presentation of a defense and that Divver was not in jail. The prejudice element of the evaluation, however, includes personal factors as well as a presumption of prejudice derived from the length of the delay, which favor Divver. Weighing all of the circumstances reviewed in Part II of this opinion, we conclude, on balance, that Divver's right to a speedy trial as guaranteed by article 21 of the Maryland Declaration of Rights has been violated. The remedy is dismissal. *See Brady,* 291 Md. at 270, 434 A.2d at 579; *Jones,* 279 Md. at 18, 367 A.2d at 12; *Smith,* 276 Md. at 534, 350 A.2d at 636; *Epps,* 276 Md. at 121, 345 A.2d at 78.

Accordingly, we shall reverse the judgment of the Circuit Court for Howard County and remand this case to that court with instructions to dismiss the charging document. Under Maryland Rule 7–112(b) the judgment of the circuit court will supersede the judgment of the District Court.

*JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO ENTER A JUDGMENT DISMISSING THE CHARGING DOCUMENT. COSTS IN THIS COURT AND IN THE CIRCUIT COURT FOR HOWARD COUNTY TO BE PAID BY HOWARD COUNTY, MARYLAND.*